UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| R&O CONSTRUCTION COMPANY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ROX PRO INTERNATIONAL GROUP,<br>LTD.; et al.,<br><br>　　　　　Defendants. | 2:09-cv-01749-LRH-LRL<br><br>ORDER |

Before the court is defendant WD Partners, Inc.'s ("WD Partners") motion for summary judgment on plaintiff R&O Construction Company's ("R&O") second amended complaint (Doc. #43[1]). Doc. #73. R&O filed an opposition to the motion (Doc. #84) to which WD Partners replied (Doc. #91).

**I.     Facts and Background**

This is a construction defect action. In September 2007, R&O entered into a contract with non-party Home Depot to act as the general contractor for a Home Depot store in Las Vegas, Nevada. R&O subcontracted the application of the required stone veneer, manufactured by defendant Rox Pro International Groups, Ltd. ("Rox Pro"), to non-party New Creation Masonry

---

[1] Refers to the court's docket number.

1   Inc. ("New Creation"). New Creation purchased the stone veneer from defendant Arizona Stone
2   and Architectural Products NV, LLC ("Arizona Stone"). Allegedly, the stone veneer failed and
3   R&O was forced to make substantial structural repairs to the Home Depot store.
4       Prior to this incident, in September 2003, the Home Depot entered into a contract with WD
5   Partners to provide architectural services for all new Home Depot store locations.[2] Pursuant to this
6   agreement WD Partners designed and prepared all plans and specifications, including those related
7   to the use and application of the required stone veneer, for the Las Vegas Home Depot location.
8       On September 3, 2009, R&O filed its initial complaint against defendants Rox Pro;
9   Real Stone Source, LLC ("Real Stone"), the distributor for Rox Pro; Arizona Stone; and WD
10  Partners. Doc. #1. R&O filed a first amended complaint on February 5, 2010 (Doc. #22) and a
11  second amended complaint on June 29, 2010 (Doc. #48). The second amended complaint alleges
12  ten causes of action: (1) implied warranty of merchantability - Arizona Stone; (2) implied warranty
13  of fitness for a particular purpose - Arizona Stone; (3) implied warranty of merchantability -
14  Real Stone; (4) implied warranty of fitness for a particular purpose - Real Stone; (5) implied
15  warranty of merchantability - Rox Pro; (6) implied warranty of fitness for a particular purpose -
16  Rox Pro; (7) express warranty - Real Stone and Rox Pro; (8) express warranty - Arizona Stone,
17  Real Stone, and Rox Pro; (9) negligent misrepresentation - WD Partners and Real Stone; and (10)
18  breach of contract - WD Partners. Doc. #48.
19      Thereafter, WD Partners filed the present motion for summary judgment as to R&O's
20  claims for negligent misrepresentation and breach of contract. Doc. #73.
21  **II.    Legal Standard**
22      Summary judgment is appropriate only when the pleadings, depositions, answers to
23  interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and

---

[2] A true and correct copy of the national contract is attached as Exhibit 15 to the deposition of Jose Raymond Medina. Doc. #84, Exhibit A.

2

other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.  Discussion**

    **A. Negligent Misrepresentation**

In its motion for summary judgment, WD Partners argues that R&O's claim for negligent

misrepresentation is actually a claim for professional negligence and is therefore precluded by the economic loss doctrine. *See* Doc. #73. The court agrees.

The economic loss doctrine prohibits unintentional tort actions in which the plaintiff seeks to recover purely economic losses. *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 86 (Nev. 2009) (en banc). The Nevada Supreme Court has applied the economic loss doctrine in product liability cases as well as negligence actions. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007). The primary purpose of the economic loss doctrine is "to shield the defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus keep the risk of liability reasonably calculable." *Terracon*, 206 P.3d at 86-87 (quotation ommitted).

The determination of whether the economic loss doctrine precludes a plaintiff's claim is a two step process. The first step is to ascertain whether the damages are purely economic in nature. *Terracon*, 206 P.3d at 86. A purely economic loss is "the loss of the benefit of the user's bargain including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (overruled on other grounds by *Olson v. Richard*, 89 P.3d 31 (Nev. 2004) (en banc)).

Here, it is undisputed that R&O is seeking purely economic damages. In its complaint, R&O only seeks to recover repair and replacement costs associated with the failing stone veneer. There are no claims of additional property damage or personal injury. Therefore, the economic loss doctrine is applicable to R&O's requested damages.

The second step is to determine whether the economic loss doctrine applies to R&O's claim. Generally, a claim for negligent misrepresentation is excluded from the economic loss doctrine. *Terracon*, 206 P.3d at 87. However, the Nevada Supreme Court has held that, "in a commercial property construction defect action in which the plaintiffs seek to recover purely

1   economic losses through negligence-based claims, the economic loss doctrine applies to bar such
2   claims against design professionals who have provided professional services in the commercial
3   property development or improvement process." *Id*. at 90.

4   Here, the court finds that R&O's claim for negligent misrepresentation is comparable to the
5   professional negligence claim precluded in *Terracon*. In its complaint, R&O contends that the
6   information provided by WD Partners, the architect for the project, was inadequate and improper
7   concerning the installation of the required stone veneer. The essence of this claim then, is that WD
8   Partners, as architect, failed in its professional capacity to provide proper plans and design services
9   related to commercial property. Because "the economic loss doctrine applies to bar such claims
10  against design professionals . . . in the commercial property development or improvement process,"
11  the court shall grant defendants' motion for summary judgment as to R&O's negligent
12  misrepresentation claim. *Terracon*, 206 P.3d at 90.

13  **B. Breach of Contract**

14  In its complaint, R&O alleges that it is an intended third party beneficiary to the Design
15  Contract between WD Partners and the Home Depot, and that it can recover any damages related to
16  WD Partner's breach of that contract. *See* Doc. #48.

17  In Nevada, there must be a clear intent in the contract for a benefit to be conferred upon a
18  third-party before a court may recognize a third-party beneficiary of a contract. *See Lipshie v. Tracy*
19  *Inv. Co.*, 566 P.2d 819, 824-825 (Nev. 1997) ("Third-party beneficiary status is granted if there is
20  an intent clearly manifested by the promisor to secure the benefit claimed to the third party.").

21  Here, it is undisputed that R&O was not a signatory to the Design Contract between WD
22  Partners and the Home Depot. Further, R&O did not participate in any way in drafting or
23  negotiating the contract and was not even the general contractor for the Las Vegas store at the time
24  the Design Contract was formed.

25  Despite this, however, R&O claims that it is an intended beneficiary because Section 2 of

26

5

the Design Contract obligates WD Partners to be responsible for any and all damages related to WD Partners' failure to comply with applicable building codes and rules. Section 2 states in pertinent part that: "Work shall comply with applicable codes and requirements of governmental bodies having jurisdiction, and [WD Partners] shall be responsible for any and all damages resulting from its failure to comply with such codes, laws, rules, and regulations." Doc. #84, Exhibit A, Medina Dep., Exhibit 15.

The court has reviewed the documents and pleadings on file in this matter and finds that there is not a clear indication within the Design Contract to make R&O an intended third-party beneficiary. There is no specific language that makes a clear indication that R&O was to have third party beneficiary status years before R&O ever entered the picture as a general contractor. Further, neither R&O, nor any other general contractor, is ever mentioned in Section 2 of the Design Contract. Section 2 simply provides that WD Partners is responsible to the Home Depot for any damages resulting from WD Partners' failure to comply with building codes in designing the Home Depot location. As such, the court finds that there is no clear intent in the Design Contract to confer a benefit upon R&O. *See Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824-825 (Nev. 1997). Therefore, R&O is not an intended third-party beneficiary of the Design Contract and the court shall grant WD Partners' motion for summary judgment as to the claim for breach of contract accordingly.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #73) is GRANTED.

IT IS SO ORDERED.

DATED this 9th day of November, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE